1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
9                                  AT SEATTLE

10
    DAVID CHARLES SCHUBERT,                    )
11                                             )
                   Petitioner,                 )      CASE NO. C08-660-RSL-JPD
12                                             )
                   v.                          )
13                                             )
    KENNETH QUINN,                             )      REPORT AND RECOMMENDATION
14                                             )
                   Respondent.                 )
15  _____)

16
                    INTRODUCTION AND SUMMARY CONCLUSION
17
            Petitioner is a Washington prisoner who is currently incarcerated at the Stafford Creek
18
    Corrections Center in Aberdeen, Washington.  He seeks relief under 28 U.S.C. § 2254 from his
19
    2002 Snohomish County Superior Court conviction on a charge of second degree murder.
20
    Respondent has filed an answer to the petition, together with relevant portions of the state court
21
    record, and petitioner has filed a response to respondent's answer.  The Court, having reviewed
22
    petitioner's petition, the briefing of the parties, and the balance of the record, concludes that
23
    petitioner's federal habeas petition should be denied and this action should be dismissed with
24
    prejudice.
25
26

    REPORT AND RECOMMENDATION
    PAGE - 1

FACTUAL BACKGROUND

The Washington Court of Appeals, on direct appeal, summarized the facts of petitioner's case as follows:

> Juliana married David Schubert in 1980 shortly after Schubert's divorce from his first spouse of 17 years was finalized. When they married Schubert was 40 and Juliana was 21. According to the testimony, Schubert wanted children and soon after they were married, Schubert and Juliana had two sons. Andre was born in 1981 and Nicholas was born in 1983. The family lived on a seventeen-acre, secluded piece of property in Arlington. Juliana grew up in Arlington and her family and close friends lived in the area.

> Throughout his marriage to Juliana, Schubert had his own insurance business. For a short time when he and Juliana were first married, Schubert was also employed as a police officer for the City of Arlington.

> Schubert operated his insurance business out of a home office and Juliana worked with him as an insurance agent. Juliana was also the primary caretaker of the children and was very involved in her sons' lives. She took the boys to school each day, volunteered in their classrooms at school on a weekly basis, was active in the PTA, and participated in their activities outside of school. By all accounts, the two boys were the focus of Juliana's life.

> After they had been married for about eight years, Juliana and Schubert were having marital problems and began talking about divorce. In the Spring of 1989, Juliana consulted an attorney, bought a do-it-yourself book on dissolutions, and took steps to prepare to leave. She stopped working at Schubert's insurance business, and on June 6, 1989, began a new job at Everett Steel. Around the same time, Juliana called a woman she knew from Schubert's insurance business about renting an apartment in Arlington but asked her not to tell anyone about their conversation. Juliana told the woman she was leaving Schubert but wanted to remain nearby so that Schubert would be able to see the children as often as he wanted.

> In early June, Schubert called Theresa Wright, a close friend of Juliana's, and arranged to meet her. Theresa's spouse, Les Wright, was also a good friend of Juliana's. Schubert and Theresa met and talked for several hours. Schubert told Theresa he thought Juliana and Les were having an affair and played a tape he had surreptitiously made of one of Juliana's telephone conversations. Theresa assured him that Juliana and Les were not having an affair. Theresa testified that during their conversation Schubert was at times very angry and frustrated. At one point,

Schubert told Theresa he needed to get 'peace' back into his life and if Juliana did not cooperate with him, he would kill her.[1]

On the morning of Friday June 30, 1989, Juliana stopped on her way to work to talk to Rick Jordan, a friend of Schubert's, who was working on a construction project a few miles from the Schuberts' house. When she got out of the car, Juliana was extremely upset and crying. Juliana told Jordan that Schubert had 'threatened her and the kids with a gun.'[2] At about 10:00 a.m. Juliana called her friend Myron Wenrich from work.[3] She was distraught but said she would tell him later what had happened. As she left work for the day, Juliana told her co-workers she would see them on Monday.[4]

On the same day, Schubert made arrangements with a babysitter to take his sons away on July 3 for several hours. He told the babysitter to take them to a movie and to a restaurant for pizza. Schubert had never asked the babysitter to take the children away from the house before. Schubert also told Juliana's friend and former co-worker, Karoline Olds, not to come to work on Monday, July 3, and not to call Juliana that weekend because he was going to serve her with divorce papers.

According to Schubert, on the evening of June 30, he and Juliana had an argument about the divorce.[5] Schubert had filled out some of the paperwork from the do-it-yourself divorce book. Juliana crumpled the papers and threw them at him. Juliana was not seen again after that evening.[6] Throughout the month of July, Schubert gave conflicting accounts about Juliana's whereabouts. He told various people that Juliana had gone on vacation, to the beach, was traveling back east, was in Colorado, was with her sister, and was in Arizona. Schubert told some people that she had left him because of their marital problems. He told others that she was on vacation but he did not know where. At other times he said she was in specific,

---

[1] [Court of Appeals footnote] 5 Report of Proceedings (RP) (9/6/02) at 629.

[2] [Court of Appeals footnote] RP (9/4/02) at 250.

[3] [Court of Appeals footnote] Juliana and Wenrich had a brief sexual relationship four or five months before Juliana's disappearance. There was no evidence anyone else knew about it.

[4] [Court of Appeals footnote] Juliana also had plans to meet her son's teacher and some other school volunteers for lunch the following week.

[5] [Court of Appeals footnote] Parts of Schubert's testimony from a civil wrongful death case brought by Juliana's mother were admitted and read to the jury in the criminal trial.

[6] [Court of Appeals footnote] A former tenant, Andrew Wendell, reported seeing Juliana in the late summer of 1989 driving Schubert's red Suburban as she passed him on the highway. At trial, he could not say whether it had been Juliana or Angela Rifner, another woman who worked for Schubert and occasionally drove Schubert's car during that time.

REPORT AND RECOMMENDATION
PAGE - 3

different locations. Schubert did not express any concern or surprise that Juliana had not contacted the two boys, and that she left behind her car, her purse containing her wallet, money and credit cards, and all of her possessions.

In early July, Schubert told his friend John Rickard, the chief of police for the City of Arlington, that Juliana left home and did not take the children, her purse, keys, clothes, or her car. Chief Rickard advised him to file a missing person's report. But Schubert did not contact the police or report Juliana missing. He also did not call any of Juliana's friends or family members to let them know she was missing or to find out if they knew where she was.

Juliana had not said anything to her employer, friends, or family about plans to leave Arlington. Because Juliana had frequent daily contact with her friends, when they didn't hear from her in a couple of weeks they suspected something had happened to her. Around July 20, Juliana's friends, Les Wright, Myron Wenrich and Karoline Olds went to the police to report her disappearance because they were worried because Juliana had not contacted them.

When Schubert was first contacted by the police he said Juliana was traveling back east with a friend. When Arlington Police Detective Blake contacted him a few days later, Schubert said he did not know where Juliana was. Schubert said he did not know the names or telephone numbers of any of her friends or relatives, that Juliana was estranged from her family, and as far as he knew, she did not take anything with her when she left. Detective Blake contacted him again later the same day. In this conversation, Schubert told the detective Juliana had recently called him from Colorado and she was traveling with friends, but he didn't know their names and could not describe them. Schubert also gave the detective a telephone number for Juliana's grandmother in California. When the detective called the number, it was no longer in service.

Around the time Juliana disappeared, Schubert's behavior changed. He became nervous and edgy and began drinking during the daytime. When a babysitter, Darlene Johnson, came to the door in late July, Schubert was shaking and told her he was afraid the police were going to show up.

On August 11, the police served the first of several search warrants to search Schubert's home and surrounding property. They did not recover any physical evidence related to Juliana's disappearance.

The police looked for Juliana throughout the country and abroad, and found no evidence of her. She has not used her social security number, accessed any of her four bank accounts, used any credit cards, or obtained a driver's license or a passport.

In January 1994, the State charged Schubert with second degree murder. In March 1994, the court granted the State's motion to dismiss the charge without prejudice because of the medical condition of the lead detective, Detective Blake.

In October 2001, the State refiled the second degree murder charge. The information was amended before trial to charge Schubert with first degree murder. The State's theory was that Schubert had several motives to kill Juliana: he wanted her to cooperate with him with respect to the divorce and property division, he did not want her to have custody of his sons, and he was jealous of her relationships outside the marriage.[7] After the first trial, the jury couldn't agree on a verdict and the court declared a mistrial.

At the conclusion of the second trial in August 2002, the jury convicted Schubert of second degree murder. The court sentenced him to 164 months of confinement.[8]

(Dkt. No. 15, Ex. 6 at 2-7.)

PROCEDURAL HISTORY

Petitioner, through counsel, appealed his judgment and sentence to the Washington Court of Appeals. (*See id*., Exs. 2 and 3.) The Brief of Appellant prepared by petitioner's counsel identified the following nine assignments of error:

(1)    The trial court erred by giving lesser-included instructions on intentional second degree murder (Instructions No. 10, 11, 12).

(2)    The trial court erred by admitting statements of the alleged victim as excited utterances, in violation of ER 803(a)(2) and the sixth amendment right of confrontation.

(3)    The trial court erred by finding that a startling event had recently occurred.

(4)    The trial court commented on the evidence, in violation of Wash. Const. Art. IV, § 16.

---

[7] [Court of Appeals footnote] Schubert owed his first spouse approximately $200,000 from their property settlement. He made comments to several people that he would never suffer the financial consequences of divorce again. By the time Schubert and Juliana were contemplating divorce, his business was worth significantly more than at the time of his first divorce.

[8] [Court of Appeals footnote] Schubert's standard range was 123 to 164 months.

REPORT AND RECOMMENDATION
PAGE - 5

(5)     The trial court erred by admitting evidence of Ms. Schubert's will, in violation of ER 403 and the Sixth Amendment right to effective assistance of counsel.

(6)     The prosecutor committed misconduct in his opening statement and deprived Mr. Schubert of his Fifth and Fourteenth Amendment due process right to a fair trial.

(7)     Mr. Schubert was convicted upon insufficient evidence, in violation of the Fifth and Fourteenth Amendment due process clauses.

(8)     The trial court erred in admitting Mr. Schubert's statements to the police and his civil trial testimony, in violation of the corpus delecti rule.

(9)     The trial court did not have jurisdiction to try Mr. Schubert for intentional second degree intentional [sic] murder.

(Dkt. No. 15, Ex. 2 at 1-3.)  Petitioner also filed a pro se brief with the Court of Appeals.  (*Id.*, Ex. 3.)  On August 16, 2004, the Court of Appeals issued an unpublished opinion affirming petitioner's conviction for second degree murder.  (*Id.*, Ex. 6.)  Petitioner thereafter sought reconsideration in the Court of Appeals.  (*Id.*, Exs. 10 and 17.)  Petitioner's motions were denied, but the court did amend its opinion slightly, deleting a single footnote.  (*See id.*, Exs. 14 and 18.)

Petitioner next sought discretionary review in the Washington Supreme Court.  (*Id.*, Ex. 19.)  Petitioner argued in his petition for review that the Court of Appeals applied the wrong legal standard when deciding that the trial court properly instructed the jury on second degree murder as a lesser included offense.  (*Id.*)  On January 31, 2006, the Supreme Court denied petitioner's petition for review without comment.  (*Id.*, Ex. 20.)  The Court of Appeals issued its mandate terminating direct review on March 21, 2006.  (*Id.*, Ex. 21.)

In July 2006, petitioner filed a personal restraint petition in the Washington Court of Appeals.  (*See id.*, Exs. 22 and 23.)  Petitioner identified ten grounds for relief in his petition.  (*Id.*)

On March 13, 2007, the Acting Chief Judge of the Court of Appeals issued an order dismissing the petition. (Dkt. No. 15, Ex. 26.)

Petitioner next filed a motion for discretionary review in the Washington Supreme Court. (*See id.*, Exs. 28 and 30.) The Supreme Court Commissioner construed petitioner's motion for discretionary review as presenting the same ten issues as were presented to the Court of Appeals. (*See id.*, Ex. 32 at 1-2.) The Commissioner summarized those issues as follows:

> 1) violation of his right to a speedy trial; 2) failure to prove jurisdiction; 3) lack of "threat evidence"; 4) lack of corpus delecti; 5) prosecutorial misconduct; 6) ineffective assistance of counsel; 7) judicial misconduct; 8) "plain error" regarding Rick Jordan's testimony; 9) due process violations resulting from the State's conflicting theories; and 10) factual matters presenting issues of first impression in Washington.

(*Id.*)

On July 20, 2007, the Commissioner issued a ruling denying petitioner's motion for discretionary review. (*Id.*, Ex. 32.) The Commissioner expressly declined to reach the merits of seven of petitioner's claims, concluding that they were barred under state law.

> Mr. Schubert's claims pertaining to jurisdiction, corpus delecti, "threat evidence," Rick Jordan's testimony, prosecutorial misconduct, judicial misconduct, and conflicting theories are identical to issues decided on the merits in his direct appeal, or they are reformulations of those previously rejected claims. A petitioner cannot create a new ground for relief by supporting a previous ground with different facts or different legal arguments, or by couching the claim in different language. *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 329, 868 P.2d 835 (1994); *In re Pers. Restraint of Jeffries*, 114 Wn.2d 485, 488, 789 P.2d 731 (1990). Mr. Schubert does not show that the interests of justice require reconsideration of these issues. *In re Pers. Restraint of Brown*, 143 Wn.2d 431, 445, 21 P.3d 687 (2001).

(*Id.*, Ex. 32 at 2-3.) The Commissioner rejected petitioner's remaining claims on the merits. (*Id.*, Ex. 32 at 3-4.)

Petitioner thereafter filed an "objection" to the Commissioner's ruling which was construed as a motion to modify and was denied on October 2, 2007. (*Id.*, Exs. 33 and 34.) A

certificate of finality was issued in petitioner's personal restraint proceedings on January 11, 2008.

(Dkt. No. 15, Ex. 35.)

Petitioner now seeks federal habeas review of his second degree murder conviction.

<u>GROUNDS FOR RELIEF</u>

Petitioner identifies the following ten grounds for relief in his federal habeas petition:

1.     Speedy Trial

2.     Jurisdiction

3.     Threat Evidence/Witnesses
Confessions/Admissions

4.     Corpus Delecti/Hearsay

5.     Misconduct/Judge

6.     Ineffective Assistance of Counsel Confrontation Clause

7.     Abuse of Discretion Outrageous Governmental Conduct

8.     Due Process Inconsistent Theories Due Diligence

9.     Plain Error

10.    Case of First Impression/Sufficiency Actual Innocence

(*See* Dkt. No. 4 at 5, 6, 8, and 10-16.)

<u>DISCUSSION</u>

Respondent concedes in his answer to the petition that all of petitioner's federal habeas claims were in some fashion presented to the Washington Supreme Court in petitioner's motion for discretionary review and, thus, the claims are technically exhausted for purposes of 28 U.S.C. § 2254(b). Respondent argues, however, that because the Washington Supreme Court Commissioner expressly held that seven of petitioner's ten claims had been decided on the merits on direct appeal, and that petitioner had not made the requisite showing to justify reconsideration

REPORT AND RECOMMENDATION
PAGE - 8

of those claims, those seven claims are procedurally barred in this federal habeas proceeding. Respondent identifies those claims as petitioner's second, third, fourth, fifth, seventh, eighth, and ninth grounds for federal habeas relief. Respondent argues that petitioner's three remaining claims, petitioner's first, sixth, and tenths grounds for relief, are without merit.

Exhaustion and Procedural Default

A state prisoner is required to exhaust all available state court remedies before seeking a federal writ of habeas corpus. 28 U.S.C. § 2254(b)(1). The exhaustion requirement is a matter of comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks and citations omitted). In order to provide the state courts with the requisite "opportunity" to consider his federal claims, a prisoner must "fairly present" his claims to each appropriate state court for review, including a state supreme court with powers of discretionary review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing, *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

It is not enough that all the facts necessary to support a prisoner's federal claim were before the state courts or that a somewhat similar state law claim was made. *Anderson v. Harless*, 459 U.S. 4, 6 (1982). "If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court." *Johnson v. Zenon*, 88 F.3d at 830.

When a prisoner defaults on his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a

fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A petitioner also defaults on a federal habeas claim when he fails to exhaust his state court remedies with respect to that claim and the court to which petitioner would be required to present his claim in order to satisfy the exhaustion requirement would now find the claim to be procedurally barred. *Id*. at 735 n. 1.

### 1.   *Grounds Two, Three, Four, Five, Eight, and Nine*

The record reflects that petitioner presented his second, third, fourth, fifth, eighth, and ninth grounds for federal habeas relief to the Washington Court of Appeals on direct appeal of his conviction. However, petitioner failed to pursue those claims in his petition for review to the Washington Supreme Court on direct review. Petitioner again presented those claims to the state courts in his personal restraint proceedings. However, the Washington Supreme Court Commissioner determined that review of those claims was barred under Washington law because the claims had been raised and rejected on direct appeal and petitioner had not shown that the interests of justice required reconsideration of the issues. (Dkt. No. 15, Ex. 32 at 2-3.)

Because the last state court to consider the claims concluded that review of the claims was barred by a state procedural rule, federal habeas review of the claims is also barred if the rule applied by the state court constitutes an adequate and independent ground sufficient to support a finding of procedural default. "In order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default." *Wells v. Maas*, 28 F.3d 1005, 1010 (9th Cir. 1994).

It is well-settled under Washington law that a petitioner may not raise in a personal restraint petition an issue which was already raised and rejected on direct appeal, absent a showing that the interests of justice require relitigation of the issue. *See In re Brown*, 143 Wn.2d 431, 445 (2001); *In re Stenson*, 142 Wn.2d 710, 719 (2001); *In re Gentry*, 137 Wn.2d 378, 388 (1999); *In re Lord*, 123 Wn.2d 296, 303 (1994); *In re Vanderlugt*, 120 Wn.2d 427, 432 (1992); *In re Jeffries*, 114 Wn.2d 485, 488 (1990). The interests of justice standard may be met by showing that there has been an intervening change in the law or "some other justification for having failed to raise a crucial point or argument in the prior application." *In re* Gentry, 137 Wn.2d at 388 (quoting *In re Taylor,* 105 Wash.2d, 683, 688 (1986)).

The Supreme Court Commissioner relied on *In re Lord*, *supra*, *In re Jeffries*, *supra*, and *In re Brown*, *supra*, in concluding that petitioner's claims were barred from any further review. The state procedural bar relied upon by the Commissioner was clear, consistently applied, and well-established at the time petitioner presented his personal restraint petition to the state courts for review. Petitioner's second, third, fourth, fifth, eighth, and ninth grounds for relief are therefore barred from review in these federal habeas proceedings absent a showing of cause for his default and actual prejudice arising out of the alleged errors, or a showing that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

### 2. *Ground Seven*

Respondent asserts in his answer to the petition that petitioner's seventh ground for relief, like the six claims discussed above, is barred from federal habeas review in state court. While this Court concurs that petitioner's seventh ground for relief is not eligible for federal habeas review, the reasons for this conclusion differ from those asserted by respondent.

REPORT AND RECOMMENDATION
PAGE - 11

Petitioner's seventh ground for relief is a little unclear. However, petitioner appears to allege that the state appellate courts rendered erroneous decisions with respect to some of his claims because their decisions were based on inaccurate recitations of the facts. He also appears to allege that the state courts failed to fully address either the factual errors or the substance of his claims. It does not appear that petitioner ever presented a claim resembling his seventh ground for federal habeas relief to the state courts.

As noted above, when a petitioner fails to properly exhaust a claim in the state courts, and the court to which petitioner would be required to present the claim in order to satisfy the exhaustion requirement would find the claim to be procedurally barred, there is a procedural default for purposes of federal habeas review. *See Coleman*, 501 U.S. at 735 n. 1.

The record before this Court indicates that petitioner would now be barred from presenting his seventh ground for relief to the state courts under RCW 10.73.090 (time bar), and RCW 10.73.140 (successive petition bar). RCW 10.73.090(1) provides that a petition for collateral attack on a judgment and sentence in a criminal case must be filed within one year after the judgment becomes final. Petitioner's conviction became final for purposes of state law on March 21, 2006, the date the Court of Appeals issued its mandate on petitioner's direct appeal. It therefore appears clear that petitioner would now be time barred from returning to the state courts to present his unexhausted claim. *See* RCW 10.73.090. In addition, because petitioner has previously presented a personal restraint petition to the state courts, the state courts are unlikely to entertain another such petition from petitioner.

Accordingly, this Court concludes that petitioner has procedurally defaulted on his seventh ground for federal habeas relief. Petitioner may therefore only obtain federal habeas review of this claim by demonstrating cause for the default and actual prejudice as a result of the alleged

violation of federal law, or by demonstrating that failure to consider the claims will result in a

fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

Cause and Prejudice

To satisfy the "cause" prong of the cause and prejudice standard, petitioner must show that

some objective factor external to the defense prevented him from complying with the state's

procedural rule. *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

To show "prejudice," the petitioner "must shoulder the burden of showing, not merely that the

errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and

substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United*

*States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Only in an "extraordinary case"

may the habeas court grant the writ without a showing of cause or prejudice to correct a

"fundamental miscarriage of justice" where a constitutional violation has resulted in the conviction

of a defendant who is actually innocent. *Murray*, 477 U.S. at 495-96.

Petitioner fails to establish that any factor external to the defense prevented him from

complying with the state's procedural rules. Because petitioner has not met his burden of

demonstrating cause for his procedural default, this Court need not determine whether petitioner

carried his burden of showing actual prejudice. *Cavanaugh v. Kincheloe*, 877 F.2d 1443, 1448

(9th Cir. 1989) (citing *Smith v. Murray*, 477 U.S. 527, 533 (1986)).

Petitioner's reply brief, and material presented in conjunction with that brief, including a

motion to present newly discovered evidence, can arguably be construed as presenting a claim of

actual innocence. The standard for evaluating a claim of actual innocence is whether "a

constitutional violation has probably resulted in the conviction of one who is actually innocent."

*Schlup v. Delo*, 513 U.S. 298, 327 (1995)(quoting *Murray v. Carrier*, 477 U.S. at 496). "To

REPORT AND RECOMMENDATION
PAGE - 13

establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id*.

Petitioner, in his reply brief, incorporates some "actual innocence" language into his argument pertaining to his tenth ground for relief, but he does not identify the new evidence he is relying on to support his apparent claim of actual innocence. In his motion to present newly discovered evidence, petitioner argues that he has in his possession evidence which was not disclosed to the defense prior to trial which is sufficient to overturn his conviction. Petitioner argues that the prosecution's failure to disclose the evidence violates the rule announced in *Brady v. Maryland*, 373 U.S. 83 (1963).

At issue here are transcripts containing testimony of petitioner's sons which was elicited at special inquiry proceedings conducted in 1989 and 1992. (See Dkt. No. 25 at 132-151.) The boys testified during those proceedings that the last time they saw their mother she was getting into a red car. (*See id*.) According to petitioner, these transcripts were located in files he obtained from his defense counsel (*Id*. at 113-114.)

The fact that the transcripts were located in defense counsel's files undermines petitioner's contention that they were improperly withheld from the defense. And, even assuming the transcripts were improperly withheld prior to petitioner's trial and only made their way into counsel's file at a later date, the portions of the transcripts submitted by petitioner do not provide sufficient evidence of his actual innocence to overcome his procedural default of his unexhausted claims.

For the foregoing reasons, this petitioner's federal habeas petition should be dismissed with respect to his second, third, fourth, fifth, seventh, eighth, and ninth grounds for relief.

Standard of Review for Exhausted Claims

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was *contrary to*, or involved an *unreasonable application* of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d) (emphasis added).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *Id.*  The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

Speedy Trial

Petitioner asserts in his first ground for federal habeas relief that his right to a speedy trial was violated when over eight years elapsed between his original arrest on January 7, 1994, on charges arising out of the June 1989 disappearance of his wife, and his re-arrest on similar charges in October 2001.

The United States Supreme Court has held that lengthy pre-indictment delays do not implicate a defendant's Sixth Amendment right to a speedy trial because that right does not attach

until a defendant is formally charged. *United States v. Lovasco*, 431 U.S. 783, 788 (1977); *United States v. Marion*, 404 U.S. 307, 320 (1971). Statutes of limitations, rather than the Sixth Amendment, provide the primary guarantee against prosecutorial delay in the bringing of criminal charges. *See Lovasco*, 431 U.S. at 789 (citing *Marion*, 404 U.S. at 322). Nonetheless, the Supreme Court has acknowledged that "the Due Process Clause has a limited role to play in protecting against oppressive delay." *Lovasco*, 431 U.S. at 789. The due process inquiry, on a claim concerning pre-indictment delay, requires consideration of the reasons for the delay as well as the prejudice to the accused. *Lovasco*, 431 U.S. at 790.

In *Lovasco*, the Court made clear that "prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt" *Id.* at 791. In fact, the Court rejected the idea that prosecutors are constitutionally required to file charges the instant they have assembled sufficient evidence to prove guilt beyond a reasonable doubt. *See id.* at 792-93. The Court concluded that investigative delay, as opposed to delay undertaken solely to gain a tactical advantage, does not deprive a defendant of due process, even if his defense might have been somewhat prejudiced by the delay. *Id.* at 796.

The Washington Court of Appeals rejected petitioner's speedy trial claim on collateral review of his conviction:

> Schubert first contends that his right to a speedy trial was violated by the eight year delay between the dismissal of the charge in 1994 and the refiling of the charge in 2001. Because there is no statute of limitations on murder in Washington,[9] and speedy trial rules do not apply to delays prior to charging or arrest, the question is whether the delay violated Schubert's Fifth Amendment right to due process. Due process may require dismissal of a criminal prosecution when actual prejudice is shown and the prosecutor had no reasonable justification for the

---

[9] [Court of Appeals footnote] RCW 9A.04.080(1)(a)(i).

delay.[10]  But "the showing of actual prejudice must be sufficient to overcome the legislative intent expressed by the absence of a limitation on prosecution for such a crime, before the prosecution should be forbidden."[11]

Here, the record reveals that in light of the lack of a body or crime scene, when the lead detective became ill and eventually died, the prosecutor was not prepared to proceed with the prosecution in 1994.  After a civil case in which a jury found that Schubert killed Juliana, a new team of prosecutors reviewed the civil trial transcripts, interviewed witnesses, and obtained DNA testing of certain evidence before refiling the charge in 2001.  Schubert presents no evidence that the prosecutor's office delayed refiling for unfair or improper tactical reasons.

To demonstrate prejudice, Schubert contends that he was denied the right to depose Detective Blake to obtain potentially exculpatory evidence and presents a list of references to trial transcripts entitled "Statements of Uncertainty," purporting to list indications of lapses in memory and conflicting testimony.  Schubert fails to demonstrate actual prejudice.  He fails to identify particular exculpatory evidence that a deposition of Detective Blake would have revealed.  Schubert's speculation, bare assertions and conclusory allegations are not sufficient here.  Regarding his analysis of the testimony of various witnesses, Schubert identifies nothing more than questions that the jury could have resolved to his advantage.  The trier of fact resolves issues of conflicting testimony, determines credibility of the witnesses, and weights the persuasiveness of the evidence.[12]  Schubert fails to demonstrate grounds for relief based on the delay between the 1994 dismissal and the 2001 charge.

(Dkt. No. 15, Ex. 26 at 3-4.)

The Washington Supreme Court upheld the decision of the Court of Appeals:

The acting chief judge correctly rejected Mr. Schubert's "speedy trial" argument (really a claim of prosecutorial delay).  There is no statute of limitations for murder, RCW 9A.04.080(1)(a)(i), and the State acted reasonably in delaying its prosecution given the lack of direct evidence, the illness and eventual death of the

---

[10] [Court of Appeals footnote]  State v. Haga, 8 Wn. App. 481, 484-85, 507 P.2d 159 (1973) (allegations of prejudice – including reduced ability to present defense based on mental condition, unavailable defense witnesses, loss of taped defendant's statement, unavailable piece of evidence, and poor memories of several witnesses – did not overcome absence of any statute of limitations for first degree murder).

[11] [Court of Appeals footnote] Haga, 8 Wn. App. at 489.

[12] [Court of Appeals footnote] State v. Walton, 64 Wn. App.  410, 416, 824 P.2d 533 (1992).

REPORT AND RECOMMENDATION
PAGE - 17

lead detective, and the intervening wrongful death action. *See State v. Higa*, 8 Wn. App. 481, 484-85, 507 P.2d 159 (1973) (allegations of due process violation arising from delayed prosecution turn on actual prejudice and prosecutor's lack of reasonable justification for delay). Mr. Schubert's argument that the delay prejudicially deprived him of an opportunity to depose the late Detective Blake relies on speculative allegations that such a deposition would have unveiled exculpatory evidence. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992) (bare assertions and conclusory allegations do not justify collateral relief); *see also Haga*, 8 Wn. App. at 489 (speculation insufficient to show actual prejudice arising from delay). Mr. Schubert further speculates, without support, that the evidence would have been more favorable had the trial occurred earlier. *See id.* Under the circumstances, Mr. Schubert fails to show prejudice arising from the delay in trial. *Haga*, 8 Wn. App. at 489. For the same reasons, there is no merit to Mr. Schubert's claim that the trial court abused its discretion in allowing him to be brought to trial.

(Dkt. No. 15, Ex. 32 at 3.)

The decisions of the state courts are entirely consistent with federal law. The state courts correctly determined that petitioner's claim implicated Fifth Amendment due process concerns and not Sixth Amendment speedy trial concerns. And, the courts' conclusions that the state acted reasonably in delaying its prosecution of petitioner, and that petitioner had not demonstrated any prejudice arising out of the delay, are amply supported by the record before this Court. Petitioner makes no showing that the decision of the state courts was contrary to, or constituted an unreasonable application of clearly established federal law. Accordingly, petitioner's federal habeas petition should be denied with respect to his first ground for relief.

<u>Ineffective Assistance of Counsel</u>

Petitioner asserts in his sixth ground for relief that he was denied his right to effective assistance of counsel when his trial counsel stipulated to the admission of Rick Jordan's prior testimony in lieu of having Mr. Jordan testify at petitioner's second trial. Petitioner also appears to complain that his counsel failed to oppose the admission at trial of a declaration submitted by

REPORT AND RECOMMENDATION
PAGE - 18

petitioner to the probate court in which he requested that the court enter an order declaring Juliana Schubert deceased.

A criminal defendant has a right, guaranteed by the Sixth Amendment, to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must prove (1) that counsel's performance was deficient and, (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Judicial scrutiny of counsel's performance must be highly deferential. *Id*. at 689. There is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance. *Id*. In order to prevail on an ineffective assistance of counsel claim, a petitioner must overcome the presumption that counsel's challenged actions might be considered sound trial strategy. *Id*. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*.

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. In order to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The reviewing Court need not address both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697. Furthermore, if both components are to be

considered, there is no prescribed order in which to address them.  *Strickland*, 466 U.S. at 697.

The state courts rejected petitioner's ineffective assistance of counsel claims on collateral review.  As to the two ineffective assistance claims presented to this Court for review, the Court of Appeals ruled as follows:

> Although Schubert presents several reasons that his attorney should have objected to the reading of Rick Jordan's prior testimony his claim must fail because the written stipulation to its admission specifically states that the defense had strategic reasons for doing so.  The record also reveals that both Schubert's attorneys fully litigated the admission of his own prior testimony, presenting various arguments to exclude it.

(Dkt. No. 15, Ex. 26 at 7.

The Washington Supreme Court did not address petitioner's ineffective assistance of counsel claim regarding the admission at trial of his prior testimony in the probate court.[13]  As to petitioner's claim that counsel erred in stipulating to the admission of Rick Jordan's prior testimony, the Supreme Court concluded that petitioner failed to show that "there was no legitimate tactical reason for stipulating to the admission of Jordan's testimony, or that more efforts to exclude that testimony would have been successful."  (Dkt. No. 15, Ex. 32 at 4.)

Petitioner's ineffective assistance of counsel claims were properly denied by the state courts.  As to the first part of petitioner's ineffective assistance of counsel claim, the record

---

[13]  Respondent argues that this second part of petitioner's ineffective assistance claim is unexhausted because the admission of testimony from the probate proceeding was not alleged as a basis for ineffectiveness in the state courts.  However, the record reflects that petitioner did present such a claim to the Washington Court of Appeals in his personal restraint petition.  (*See* Dkt. No. 15, Ex. 23 at 30.)  It is less clear whether petitioner can be deemed to have properly presented the issue to the Washington Supreme Court in his motion for discretionary review.  (*See id.*, Ex. 28.)  However, because this Court deems the claim to be without merit, it need not conclusively resolve the exhaustion issue.  *See* 28 U.S.C. § 2254(b)(2).

reflects that at petitioner's second trial, the parties entered into the following stipulation pertaining

to Rick Jordan's testimony:

> The parties hereby stipulate that Rick Jordan is available for trial but for tactical reasons the parties stipulate that the attached transcript of his prior testimony under oath may be read to the jury and considered as evidence. The transcript is the complete testimony from the criminal trial in this matter except for sustained objections.

> The State agrees that it will not object under ER 801(d)(1) to the testimony of Vicki Austad about a conversation she had with Rick Jordan on the basis that the defense failed to cross-examine Rick Jordan about the statement. All other objections to the testimony of Vicki Austad are reserved.

(Dkt. No. 15, Ex. 24 at Ex. 24.)

Petitioner now complains about his counsel's decision to enter into this stipulation and he

suggests that the stipulation was entered into to cover-up an error by his previous defense team

which failed to cross-examine Mr. Jordan about statements he made to defense investigator Vicki

Austad which were inconsistent with his trial testimony. (*See* Dkt. No. 4-2 at 37.) Petitioner also

suggests that had counsel not stipulated to the admission of Mr. Jordan's prior testimony, Mr.

Jordan's testimony would likely have been excluded on Confrontation Clause grounds. (*Id*. at 37-

38.) Petitioner's assertions are not support by the record.

Petitioner offers no evidence that his counsel entered into the stipulation for any reason

other than legitimate trial strategy. Petitioner also fails to demonstrate that his counsel would

have had any legal basis upon which to move for exclusion of Mr. Jordan's testimony. It is clear

that petitioner does not believe Mr. Jordan was being truthful in his testimony. However, such

concerns would not have constituted a viable ground upon which to seek exclusion of the

evidence. As the state courts previously explained, questions concerning inconsistencies in a

witness's testimony go to the weight of the evidence and not to its admissibility. (*See* Dkt. No. 15, Ex. 26 at 4-5 and Ex. 32 at 3.)

Petitioner has demonstrated neither deficient performance nor any resulting prejudice arising out of counsel's stipulation to the admission of Rick Jordan's prior testimony. Accordingly, petitioner's federal habeas petition should be denied with respect to the first portion of his ineffective assistance of counsel claim.

As noted above, petitioner also appears to claim that his counsel rendered ineffective assistance by failing to prevent the admission at his criminal trial of a statement made in probate court to the effect that Juliana Schubert was dead. The record reflects that petitioner's counsel did, in fact, seek to suppress all of petitioner's prior statements. (*See* Dkt. No. 25 at 78-84.) That counsel was unsuccessful in this effort does not render the representation deficient. Petitioner fails to explain what else he believes counsel might have done to achieve exclusion of the statement. Petitioner also fails to demonstrate that exclusion of the statement, in light of all of the evidence presented at trial, would have altered the outcome of the trial. Accordingly, petitioner's federal habeas petition should be denied with respect to the second portion of his ineffective assistance of counsel claim as well.

<u>Sufficiency of the Evidence</u>

Petitioner asserts in his tenth ground for relief that his is a case of "first impression." Petitioner does not explain what he believes the constitutional underpinnings of such a claim to be. A review of the argument supporting this claim, however, suggests that petitioner is actually challenging the sufficiency of the evidence upon which he was convicted of second degree murder.        The Due Process Clause of the Fourteenth Amendment requires that the prosecution prove beyond a reasonable doubt each element of the charged offense. *Carella v.*

*California*, 491 U.S. 263, 265 (1989)(citing *In re Winship*, 397 U.S. 358, 364 (1970)).  When

evaluating a claim of insufficiency of the evidence, a reviewing court must consider "whether,

after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v.*

*Virginia*, 443 U.S. 307, 319 (1979).  This standard is "'highly deferential' to the jury's findings."

*United States v. Bancalari*, 110 F.3d 1425, 1428 (9th Cir. 1997).

The Washington Court of Appeals rejected petitioner's sufficiency of the evidence claim

on direct appeal:

> Schubert contends the evidence does not support his conviction for second degree murder because there was not sufficient evidence for the jury to conclude that Juliana was dead or that he killed her.

> A challenge to the sufficiency of the evidence to support a conviction requires that the evidence and all reasonable inferences be viewed in a light most favorable to the State.  State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). The test is whether a rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt.  Id.

> The evidence was sufficient to support the jury's conclusion that Schubert killed Juliana and the jury's second degree murder verdict.  The evidence showed that there were problems in the marriage.  Juliana and Schubert were fighting and Juliana was preparing to leave.  Schubert suspected Juliana was having an affair and was angry at the prospect of a divorce.  On the day she disappeared Schubert threatened Juliana with a gun.  Schubert admitted they had an argument that night. No one ever saw Juliana again after that day.

> After Juliana disappeared, Schubert gave inconsistent accounts about where Juliana was.  He did not solicit help from the police, or friends, or family to find her.  Schubert went to Juliana's office about a week after she disappeared to collect her personal items and requested a refund for the fee he paid to the employment agency to find Juliana the job at Everett Steel.  Schubert lied to the police and delayed their involvement.  Witnesses described Schubert's demeanor as nervous and his behavior as erratic after Juliana's disappearance.

> Since her disappearance fifteen years ago, no one Juliana ever knew has heard from her.  She told no one she was leaving.  Juliana left her children, who was devoted to, and did not reappear when her youngest child died.  Juliana left a secluded residence without a car, or any personal items, including identification

and money.

Viewing the evidence in the light most favorable to the State, a rational jury could conclude beyond a reasonable doubt that Schubert committed second degree murder.

(Dkt. No. 15, Ex. 6 at 19-20.)

The Court of Appeals applied the correct standard in evaluating petitioner's sufficiency of the evidence claim and reasonably concluded that the evidence was indeed sufficient to support petitioner's conviction for second degree murder. Accordingly, petitioner's federal habeas petition should be denied with respect to his tenth ground for relief.

<u>Other Pending Motions</u>

As noted above, petitioner filed in conjunction with his reply brief a motion to present newly discovered evidence. (*See* Dkt. No. 25 at 110.) Petitioner also filed in conjunction with his reply brief a motion seeking release from custody pending resolution of his federal habeas petition. (*See id.* at 152.) Petitioner appears to base his motion for release from custody, at least in part, on the proffered newly discovered evidence. Petitioner's assertions to the contrary, the newly discovered evidence does not, in this Court's view, undermine the validity of petitioner's conviction. Accordingly, petitioner's motion to present newly discovered evidence as well as his motion for release from custody should be denied.

<u>CONCLUSION</u>

Based upon the foregoing, this Court recommends that petitioner's federal habeas petition be denied and that this action be dismissed with prejudice. This Court further recommends that

REPORT AND RECOMMENDATION
PAGE - 24

petitioner's motion to present newly discovered evidence and his motion for release from custody

be denied.  A proposed order accompanies this Report and Recommendation.

DATED this 16th day of January, 2009.

_James P. Donohue_

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 25