1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

DAVID CHARLES SCHUBERT,

8                    Petitioner,

9          v.

10   KENNETH QUINN,

11                    Respondent.

12

Case No. C08-0660RSL

ORDER DISMISSING FEDERAL
HABEAS PETITION

13
14

## I. INTRODUCTION

15   This matter comes before the Court on petitioner's federal habeas petition (Dkt. #4),

16   petitioner's "Motion for Leave to File an Amended Petition for Writ of Habeas Corpus" (Dkt.

17   #93), petitioner's "Motion to Expand the Record" (Dkt. #80), and respondent's "Motion to

18   Strike" (Dkt. #76). Petitioner has identified eight grounds for relief from his state court

19   conviction. Magistrate Judge Donohue prepared a Second Report and Recommendation (2nd

20   R&R) addressing seven of petitioner's eight grounds along with the parties' respective motions

21   to strike and expand the record. Judge Donohue recommended that this Court deny the petition,

22   and grant and deny the above motions in part. The 2nd R&R did not address petitioner's motion

23   to amend.

24   As explained below, the Court adopts the 2nd R&R as to grounds two, five, seven, and

25   eight. As to the remaining grounds, this Court agrees with the 2nd R&R that the petition should

26   be denied, but relies upon different reasoning. Further, the Court DENIES petitioner's motion to

ORDER DISMISSING FEDERAL
HABEAS PETITION

1   amend (Dkt. #93), DENIES respondent's motion to strike (Dkt. #76), and GRANTS petitioner's

2   motion to expand the record (Dkt. #80).

**II. Discussion**

**A. Background**

The Washington Court of Appeals, on direct appeal, summarized the facts as follows:

Juliana married David Schubert in 1980 shortly after Schubert's divorce from his first spouse of 17 years was finalized. When they married Schubert was 40 and Juliana was 21. According to the testimony, Schubert wanted children and soon after they were married, Schubert and Juliana had two sons. Andre was born in 1981 and Nicholas was born in 1983. The family lived on a seventeen-acre, secluded piece of property in Arlington. Juliana grew up in Arlington and her family and close friends lived in the area.

Throughout his marriage to Juliana, Schubert had his own insurance business. For a short time when he and Juliana were first married, Schubert was also employed as a police officer for the City of Arlington.

Schubert operated his insurance business out of a home office and Juliana worked with him as an insurance agent. Juliana was also the primary caretaker of the children and was very involved in her sons' lives. She took the boys to school each day, volunteered in their classrooms at school on a weekly basis, was active in the PTA, and participated in their activities outside of school. By all accounts, the two boys were the focus of Juliana's life.

After they had been married for about eight years, Juliana and Schubert were having marital problems and began talking about divorce. In the Spring of 1989, Juliana consulted an attorney, bought a do-it-yourself book on dissolutions, and took steps to prepare to leave. She stopped working at Schubert's insurance business, and on June 6, 1989, began a new job at Everett Steel. Around the same time, Juliana called a woman she knew from Schubert's insurance business about renting an apartment in Arlington but asked her not to tell anyone about their conversation. Juliana told the woman she was leaving Schubert but wanted to remain nearby so that Schubert would be able to see the children as often as he wanted.

In early June, Schubert called Theresa Wright, a close friend of Juliana's, and arranged to meet her. Theresa's spouse, Les Wright, was also a good friend of Juliana's. Schubert and Theresa met and talked for several hours. Schubert told Theresa he thought Juliana and Les were having an affair and played a tape he had surreptitiously made of one of Juliana's telephone conversations. Theresa assured him that Juliana and Les were not having an affair. Theresa testified that during their conversation Schubert was at times very angry and frustrated. At one point, Schubert told Theresa he needed to get "peace" back into his life and if Juliana did not cooperate

ORDER DISMISSING FEDERAL
HABEAS PETITION                                    -2-

with him, he would kill her.[1]

On the morning of Friday June 30, 1989, Juliana stopped on her way to work to talk to Rick Jordan, a friend of Schubert's, who was working on a construction project a few miles from the Schuberts' house. When she got out of the car, Juliana was extremely upset and crying. Juliana told Jordan that Schubert had "threatened her and the kids with a gun."[2] At about 10:00 a.m. Juliana called her friend Myron Wenrich from work.[3] She was distraught but said she would tell him later what had happened. As she left work for the day, Juliana told her coworkers she would see them on Monday.[4]

On the same day, Schubert made arrangements with a babysitter to take his sons away on July 3 for several hours. He told the babysitter to take them to a movie and to a restaurant for pizza. Schubert had never asked the babysitter to take the children away from the house before. Schubert also told Juliana's friend and former co-worker, Karoline Olds, not to come to work on Monday, July 3, and not to call Juliana that weekend because he was going to serve her with divorce papers.

According to Schubert, on the evening of June 30, he and Juliana had an argument about the divorce.[5] Schubert had filled out some of the paperwork from the do-it-yourself divorce book. Juliana crumpled the papers and threw them at him. Juliana was not seen again after that evening.[6]

Throughout the month of July, Schubert gave conflicting accounts about Juliana's whereabouts. He told various people that Juliana had gone on vacation, to the beach, was traveling back east, was in Colorado, was

---

[1][Court of Appeals footnote] 5 Report of Proceedings (RP) (9/6/02) at 629.

[2][Court of Appeals footnote] RP (9/4/02) at 250.

[3][Court of Appeals footnote] Juliana and Wenrich had a brief sexual relationship four or five months before Juliana's disappearance. There was no evidence anyone else knew about it.

[4][Court of Appeals footnote] Juliana also had plans to meet her son's teacher and some other school volunteers for lunch the following week.

[5][Court of Appeals footnote] Parts of Schubert's testimony from a civil wrongful death case brought by Juliana's mother were admitted and read to the jury in the criminal trial.

[6][Court of Appeals footnote] A former tenant, Andrew Wendell, reported seeing Juliana in the late summer of 1989 driving Schubert's red Suburban as she passed him on the highway. At trial, he could not say whether it had been Juliana or Angela Rifner, another woman who worked for Schubert and occasionally drove Schubert's car during that time.

ORDER DISMISSING FEDERAL
HABEAS PETITION                    -3-

with her sister, and was in Arizona. Schubert told some people that she had left him because of their marital problems. He told others that she was on vacation but he did not know where. At other times he said she was in specific, different locations. Schubert did not express any concern or surprise that Juliana had not contacted the two boys, and that she left behind her car, her purse containing her wallet, money and credit cards, and all of her possessions.

In early July, Schubert told his friend John Rickard, the chief of police for the City of Arlington, that Juliana left home and did not take the children, her purse, keys, clothes, or her car. Chief Rickard advised him to file a missing person's report. But Schubert did not contact the police or report Juliana missing. He also did not call any of Juliana's friends or family members to let them know she was missing or to find out if they knew where she was.

Juliana had not said anything to her employer, friends, or family about plans to leave Arlington. Because Juliana had frequent daily contact with her friends, when they didn't hear from her in a couple of weeks they suspected something had happened to her. Around July 20, Juliana's friends, Les Wright, Myron Wenrich and Karoline Olds went to the police to report her disappearance because they were worried because Juliana had not contacted them.

When Schubert was first contacted by the police he said Juliana was traveling back east with a friend. When Arlington Police Detective Blake contacted him a few days later, Schubert said he did not know where Juliana was. Schubert said he did not know the names or telephone numbers of any of her friends or relatives, that Juliana was estranged from her family, and as far as he knew, she did not take anything with her when she left. Detective Blake contacted him again later the same day. In this conversation, Schubert told the detective Juliana had recently called him from Colorado and she was traveling with friends, but he didn't know their names and could not describe them. Schubert also gave the detective a telephone number for Juliana's grandmother in California. When the detective called the number, it was no longer in service.

Around the time Juliana disappeared, Schubert's behavior changed. He became nervous and edgy and began drinking during the daytime. When a babysitter, Darlene Johnson, came to the door in late July, Schubert was shaking and told her he was afraid the police were going to show up.

On August 11, the police served the first of several search warrants to search Schubert's home and surrounding property. They did not recover any physical evidence related to Juliana's disappearance.

The police looked for Juliana throughout the country and abroad, and found no evidence of her. She has not used her social security number, accessed any of her four bank accounts, used any credit cards, or obtained a driver's license or a passport.

ORDER DISMISSING FEDERAL
HABEAS PETITION                    -4-

In January 1994, the State charged Schubert with second degree murder. In March 1994, the court granted the State's motion to dismiss the charge without prejudice because of the medical condition of the lead detective, Detective Blake.

In October 2001, the State refiled the second degree murder charge. The information was amended before trial to charge Schubert with first degree murder. The State's theory was that Schubert had several motives to kill Juliana: he wanted her to cooperate with him with respect to the divorce and property division, he did not want her to have custody of his sons, and he was jealous of her relationships outside the marriage.[7] After the first trial, the jury couldn't agree on a verdict and the court declared a mistrial.

At the conclusion of the second trial in August 2002, the jury convicted Schubert of second degree murder. The court sentenced him to 164 months of confinement.[8]

Dkt. #17 Ex. 6 at 2-7.

**B. Procedural History[9]**

Magistrate Judge Donohue summarized the procedural history of petitioner's federal habeas corpus petition as follows:

Petitioner originally filed this federal habeas action in April 2008. (*See* Dkt. No. 1.) On January 16, 2009, this Court issued a Report and Recommendation recommending that petitioner's federal habeas petition be denied and that this action be dismissed with prejudice. (*See* Dkt. No. 26.) This Court concluded therein that seven of the ten grounds for relief asserted by petitioner in his petition were procedurally barred and that the remaining three grounds for relief were without merit. (*Id.*) The Report and Recommendaction was adopted by [this Court] on April 13, 2009, and this action was dismissed with prejudice. (Dkt. No. 35.)

Petitioner appealed the order of dismissal to the United States Court of Appeals for the Ninth Circuit. (Dkt. No. 37.) The Ninth Circuit reversed the order of dismissal as to the seven claims which this Court had

---

[7][Court of Appeals footnote] Schubert owed his first spouse approximately $200,000 from their property settlement/ He made comments to several people that he would never suffer the financial consequences of divorce again. By that time Schubert and Juliana were contemplating divorce, his business was worth significantly more than at the time of his first divorce.

[8][Court of Appeals footnote] Schubert's standard range was 123 to 164 months.

[9]This section sets forth the procedural history of petitioner's federal habeas corpus petition and will not repeat the procedural history pertaining to petitioner's state court proceedings. See R&R (Dkt. #26) at 5-8.

determined were procedurally barred and remanded the matter for this Court to consider the merits of those claims. (Dkt. No. 57.) The Ninth Circuit declined, however, to expand the certificate of appealability to include the three issues this Court had previously considered on the merits, and rejected a request by petitioner for an evidentiary hearing on his allegation that the prosecutor had suppressed transcripts of his sons' testimony in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (*See id.*)

Following remand, this Court directed respondent to file a supplemental answer addressing petitioner's seven remaining claims. (Dkt. No. 60.) Respondent filed a timely supplemental answer and petitioner, after being granted several extensions of time, filed a response thereto. (*See* Dkt. Nos. 62, 65, 67, 77 and 81.) Petitioner attached to his response a number of exhibits which were not previously before this Court. (*See* Dkt. No. 81.) Respondent filed a reply memorandum in support of his answer and included in that brief a motion to strike the exhibits submitted by petitioner in support of his response. (Dkt. No. 76.) Respondent also sought to strike the portions of petitioner's responsive brief which relied upon the exhibits. (*See id.*)

Petitioner thereafter filed a motion to expand the record pursuant to Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts. (Dkt. No. 80.) Respondent filed a brief opposing petitioner's motion to expand the record. (Dkt. No. 83.) Petitioner's federal habeas petition and all pending motions are now ripe for review.

2nd R&R (Dkt. #86) at 6-7.

Petitioner's seven remaining grounds for relief are as follows:

2) Jurisdiction

3) Threat Evidence/Witness Confessions/Admissions

4) Corpus Delecti/Hearsay

5) Misconduct/Judge

7) Abuse of Discretion Outrageous Government Conduct

8) Due Process Inconsistent Theories Due Diligence

9) Plain Error

The third, fourth, and ninth grounds for relief involve challenges to the admission of evidence including hearsay testimony, the admission of petitioner's testimony from the civil wrongful death action prior to his criminal prosecution, the decedent's will, the decedent's death certification, and evidence from a probate proceeding. Id. at 14.

In his objection to the 2nd R&R, petitioner alleges a new ground for relief: that the prosecution conspired with the plaintiff in the civil wrongful death action to get petitioner to testify in violation of the Fifth Amendment. Objection (Dkt. #90) at 16-18. Petitioner submitted new evidence to the Court in support of his new ground for relief. See Solovy Declarations (Dkt. #71-74). Respondent then moved to strike the evidence (Dkt. #76) while petitioner moved to expand the record (Dkt. #80). Petitioner has also moved to amend his habeas petition to include this new claim as ground for relief eleven (Dkt. #93).

**C. Standard of Review**

The Antiterrorism and Effective Death Penalty Act (AEDPA), which applies to petitioner, mandates that

> [a]n application for a writ of habeas corpus ... shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "'Clearly established Federal law' refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions." Winzer v. Hall, 494 F.3d 1192, 1196 (9th Cir. 2007) (internal citations omitted). In order to grant relief, the district court must be convinced that "the state's court decision is 'more than incorrect or erroneous' ... [but] must be 'objectively unreasonable.'" Id. (quoting Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). For claims "adjudicated on the merits in State Court," § 2254(d) limits the record to that which was before the state court. Stokley v. Ryan, 659 F.3d 802, 807 (9th Cir. 2011). However, new evidence can be considered by the district court if petitioner raises a new ground for relief which was never adjudicated on the merits in state court. Id. at 809; see 28 U.S.C § 2254(e)(2).

**D. Jurisdiction**

The Court adopts the 2nd R&R as to petitioner's second ground for relief.

ORDER DISMISSING FEDERAL
HABEAS PETITION                    -7-

**E. Evidentiary Claims**

Petitioner asserts several grounds for relief relating to various evidentiary rulings. The Court will examine petitioner's claims individually.

"Federal habeas corpus relief does not lie for errors of state law." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991) (internal citation omitted). An inquiry into whether the state trial court incorrectly admitted evidence is "no part of a federal court's habeas review of a state conviction." <u>Id.</u> "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Id.</u> at 68.

In order for a district court to grant habeas relief to a petitioner, the state court proceeding must have "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C § 2254(d). " If [the Supreme] Court has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar." <u>Williams v. Taylor</u>, 529 U.S. 362, 381 (2000). "When there is no clearly established federal law on an issue, a state court cannot be said to have unreasonably applied the law as to that issue." <u>Holley v. Yarborough</u>, 568 F.3d 1091, 1098 (9th Cir. 2009).

**1. Admission of Hearsay Testimony**

The trial court admitted the testimony of Rick Jordan concerning his conversation with Juliana Schubert on June 30, 1989. Jordan testified that Juliana told him that Schubert had threatened her with a gun. <u>See</u> Dkt. #17 Ex. 6 at 12-14. The trial court admitted the hearsay testimony under the excited utterance exception. <u>Id.</u>

"Simple errors of state law do not warrant federal habeas relief." <u>Holley</u>, 568 F.3d at 1101. It follows that the analysis in the 2nd R&R of whether the statements

constituted an excited utterance under Washington law was unnecessary. This Court

must consider first whether petitioner can satisfy the AEDPA standard for relief, and

then whether the state court's admission of the hearsay evidence was "so egregious as to

implicate the Fourteenth Amendment's guarantee of due process." Evans v. Fischer, 712

F.3d 125, 133 (2nd Cir. 2013).

As noted by the Ninth Circuit, the "Supreme Court has made very few rulings

regarding the admission of evidence as a violation of due process." Holley, 568 F.3d at

1101; see also Evans, 712 F.3d at 133-35 (analyzing Supreme Court precedent and

failing to discover a "clearly established" rule for when evidentiary errors violate due

process). "No established Supreme Court precedent suggests that [a] trial court's

admission of hearsay statements under the excited utterance exception render[s] ... [a]

trial fundamentally unfair." Bartholomew v. Van Boening, 420 Fed.Appx. 782, 784 (9th

Cir. 2011).

Petitioner has failed to demonstrate to the Court that there is "clearly established

Federal law" in support of his ground for relief. Under AEDPA, "even clearly erroneous

admissions of evidence that render a trial fundamentally unfair may not permit the grant

of federal habeas corpus relief if not forbidden by 'clearly established Federal law' as

laid out by the Supreme Court." Holley, 568 F.3d at 1101 (internal citations omitted).

Absent such "clearly established Federal law," this Court cannot conclude that the state

court's ruling was either "contrary to" or an "unreasonable application of" Supreme

Court precedent. See 28 U.S.C. § 2254(d). The Court therefore agrees with  the 2nd

R&R that relief be denied.[10]

---

[10]Petitioner argues in the alternative that, if the Court finds that trial counsel waived the hearsay objection, the waiver would constitute a denial of effective assistance of counsel. Objection (Dkt. #90) at 9 n.2. However, as petitioner presents no evidence or legal support for this theory, the Court will not consider it here.

ORDER DISMISSING FEDERAL
HABEAS PETITION                    -9-

**2. Confrontation Clause**

Petitioner asserts that his Sixth Amendment Confrontation Clause rights were violated when the hearsay testimony were admitted into evidence. Objection (Dkt. #90) at 12.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause has been limited to "testimonial statements." Michigan v. Bryant, 131 S. Ct. 1143, 1153 (2011). "[E]ven if the Sixth Amendment is not solely concerned with testimonial hearsay, that is its primary object, and interrogations by law enforcement officers fall squarely within that class." Crawford v. Washington, 541 U.S. 36, 53 (2004).[11] The Supreme Court has explicitly "reserved the question of whether and when statements made to someone other than law enforcement personnel are testimonial." Bryant, 131 S. Ct. at 1155 n.3 (internal quotation marks and citations omitted).

Under AEDPA, "there is no clearly established Supreme Court precedent on whether and when statements made to someone other law enforcement personnel are testimonial." Bartholomew, 420 Fed.Appx. at 784; see also Cota v. Hedgpeth, __Fed.Appx.__, No. 11-55171, 2013 WL 5085589, at *1 (9th Cir. Sept. 16, 2013) ("[T]he Supreme Court ... did not clearly establish federal law regarding whether statements made to a relative are testimonial."). As there is no "clearly established Federal law" on point, this Court cannot say that the state trial court's admission of the hearsay testimony was in violation of the Confrontation Clause. The Court is therefore not able to grant habeas relief on Confrontation Clause grounds and adopts the

---

[11]Petitioner initially asserted that his Confrontation Clause ground for relief was governed by Ohio v. Roberts, 448 U.S. 56 (1980), as opposed to Crawford. Response (Dkt. #70) at 49. In later pleadings he has correctly concluded that Crawford controls. Objection (Dkt. #90) at 12.

ORDER DISMISSING FEDERAL
HABEAS PETITION                    -10-

conclusion of the 2nd R&R.

**3. Washington's Corpus Delecti Rule**

In both his third and fourth grounds for relief petitioner challenges the admission of his testimony from the civil wrongful death action on the grounds that it violated Washington's corpus delecti rule. The Court adopts the conclusion in the 2nd R&R.

**4. Admission of Juliana Schubert's Will**

This Court adopts the conclusion in the 2nd R&R concerning the admission of Juliana Schubert's will.

**5. Admission of Death Certificate and Probate Court Evidence**

In his ninth ground for relief, petitioner challenges the admission of Juliana Schubert's death certificate and evidence from probate court. The Court adopts the conclusion in the 2nd R&R.

**F. Prosecutorial and Judicial Misconduct**

Petitioner asserts both prosecutorial and judicial misconduct as his fifth grounds for relief.

**1. Prosecutorial Misconduct**

The Court adopts the conclusion in the 2nd R&R concerning alleged prosecutorial misconduct.

**2. Judicial Misconduct**

Petitioner contends that the trial judge made improper and coercive statements to the jury after deliberations had begun and that those statements constituted an improper "Allen Charge." Petitioner focuses his challenge on two statements made by the trial judge on the seventh day of deliberations: 1) "I'm not going to declare a mistrial" and 2) "[W]e have come way too far for there to be a mistrial." 2nd R&R (Dkt. #86) at 26. As the first statement was made out of the presence of the jury, the Court agrees with the 2nd R&R that it is irrelevant to petitioner's claim. Id.

ORDER DISMISSING FEDERAL
HABEAS PETITION                    -11-

1    A trial judge can issue an "Allen Charge" supplemental instruction to "urge[] the

2    minority [of jurors] to consider the views of the majority, and ask themselves whether

3    their own views were reasonable under the circumstances." Lowenfield v. Phelps, 484

4    U.S. 231, 237 (1988). "The supplemental charge given by the trial court [must be

5    considered] 'in its context and under all the circumstances.'" Id. (internal citation

6    omitted).

7    Petitioner fails to show that the trial judge committed judicial misconduct when

8    issuing the challenged instruction. The context of the instruction forecloses any such

9    argument. A juror had reported that she had inadvertently received some information

10    about one of petitioner's sons. 2nd R&R (Dkt. #86) at 26-27. Both the juror and the

11    presiding juror were summoned to speak with the trial judge outside of the presence of

12    the remaining jurors. Id. The judge then addressed the entire jury as follows:

> Ladies and gentleman, I wanted to take this opportunity to do a couple things. Number one is, of course, to remind you of the necessity of making sure that no one talks to you about the case in any way, shape or form. Obviously, we have come way too far for there to be a mistrial for that reason. And therefore, it's abundantly important that you refrain from getting into any sort of situation that would remotely violate that directive.
>
> Id. at 27.

The Court finds that petitioner is taking the phrase "we have come way too far

for there to be a mistrial" out of context. When the transcript is viewed in its entirety,

the trial judge was merely reminding the jury that they were not to talk to any outside

person about the case. The purpose of the challenged statement was solely to impress

upon the jury how important it was to obey the instruction and of the disastrous

consequences that could result from failure to do so.

The Court therefore adopts the conclusion in the 2nd R&R and finds that

petitioner has demonstrated no ground for relief based on judicial misconduct.

ORDER DISMISSING FEDERAL
HABEAS PETITION         -12-

**G. Abuse of Discretion and Outrageous Government Conduct**

The Court adopts the conclusion in the 2nd R&R that petitioner failed to present a cognizable claim in his seventh ground for relief.

**H. Inconsistent Theories and False Evidence**

The Court adopts the conclusion in the 2nd R&R and denies petitioner's eighth ground for relief.

**I. Additional Fifth Amendment Ground for Relief**

Petitioner asserted a new claim for relief in his response to respondent's supplemental answer: that he was denied his Fifth Amendment privilege against self-incrimination when the state actively provided assistance in his mother-in-law's civil wrongful death action. Response (Dkt. #70) at 19. Petitioner claims that the state played a large role on the civil plaintiff's legal team for the purpose of having him testify, thereby gaining new evidence for the prosecution. Id. He further asserts that the prosecution failed in its duty of candor to both defense counsel and the court by downplaying the state's role. Objection (Dkt. #90) at 18. Petitioner requests that the Court consider this claim under Cullen v. Pinholster, 131 S. Ct. 1388 (2011), or, alternatively, to allow him to amend his petition to include the new ground for relief. Objection (Dkt. #90) at 18. As the 2nd R&R did not adequately address these issues, the Court declines to adopt the 2nd R&R's conclusions concerning this potential ground for relief.

As an initial matter, the Court agrees with petitioner that his new ground for relief is not barred by the Ninth Circuit's mandate on remand. "Absent a mandate which explicitly directs to the contrary, a district court upon remand can permit the plaintiff to 'file additional pleadings, vary or expand the issues . . .'" Nguyen v. United States, 792 F.2d 1500, 1502 (9th Cir. 1986) (quoting Rogers v. Hill, 289 U.S. 582, 587-88 (1933)). As the Ninth Circuit did not foreclose the possibility of this Court adjudicating new

ORDER DISMISSING FEDERAL
HABEAS PETITION                    -13-

1    issues as they arise, the Court does not consider itself barred from considering

2    petitioner's Fifth Amendment claim.

3    **1. <u>Pinholster</u> Analysis**

4     Habeas review under § 2254(d)(1) "requires an examination of the state-court

5    decision at the time it was made." <u>Pinholster</u>, 131 S. Ct. at 1392. Federal district courts

6    are therefore limited to the record that was before the state court for claims adjudicated

7    on the merits in the state court proceeding. <u>Id.</u> If, however, petitioner presents a claim

8    that was not adjudicated on the merits in state court, federal habeas review is not

9    necessarily limited to the record before the state court. <u>Stokley</u>, 659 F.3d at 809. The

10   district court may have the discretion to consider new evidence if the petitioner can

11   "show cause and prejudice for his failure to exhaust and whether he satisfied the

12   diligence requirement of § 2254(e)(2)." <u>Id.</u>

13    The Court agrees with the 2nd R&R that petitioner's new Fifth Amendment

14   claim is sufficiently different from his original ground for relief concerning his

15   testimony from the civil wrongful death trial. <u>See</u> 2nd R&R (Dkt. #86) at 8. Petitioner

16   initially objected to the admission of his testimony based on Washington's corpus

17   delecti rule. Objection (Dkt. #90) at 16. Now, however, petitioner is asserting a

18   privilege against self-incrimination claim under the Fifth Amendment. <u>Id.</u> This means

19   that <u>Pinholster</u> does not absolutely bar the Court from considering petitioner's recently

20   submitted evidence and his new claim.

21    Under § 2254(e)(2):

22   If the applicant has failed to develop the factual basis of a claim in State
     court proceedings, the court shall not hold an evidentiary hearing on the
23   claim unless the applicant shows that– (A) the claim relies on– (i) a new
     rule of constitutional law, made retroactive to cases on collateral review by
24   the Supreme Court, that was previously unavailable; or (ii) a factual
     predicate that could not have been previously discovered through the
25   exercise of due diligence; and (B) the facts underlying the claims would be
     sufficient to establish by clear and convincing evidence that but for
26   constitutional error, no reasonable factfinder would have found the

ORDER DISMISSING FEDERAL
HABEAS PETITION   -14-

1   applicant guilty of the underlying offense.

2   28 U.S.C. § 2254(e)(2). Petitioner asserts that his new ground for relief should be

3   considered by this Court based upon a showing of "cause and prejudice" even if he

4   cannot satisfy the § 2254(e)(2) burden for an evidentiary hearing. The Court agrees. See

5   Stokley, 659 F.3d at 809 (stating that the court could consider petitioner's claim if he can

6   "show cause and prejudice for his failure to exhaust and [if] he satisfie[s] the diligence

7   requirement of § 2254(e)(2).").[12]

8       Petitioner asserts that he can satisfy the "prejudice" requirement as "[t]he State had

9   little chance of winning a guilty verdict without Schubert's civil wrongful death trial

10  testimony." Objection (Dkt. #90) at 26. Even assuming this to be true, the Court does not

11  reach the issue as petitioner cannot show adequate "cause" for the default of his Fifth

12  Amendment ground for relief.

13      A showing of "cause" "must ordinarily turn on whether the prisoner can show that

14  some objective factor external to the defense impeded counsel's efforts to comply with

15  the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986), superseded by

16  statute on other grounds, AEDPA, Pub.L. 104-132, 110 Stat. 1214. External factors

17  constituting "cause" include government interference. McCleskey v. Zant, 499 U.S. 467,

18  494 (1991), superseded by statute on other grounds, AEDPA, Pub.L. 104-132, 110 Stat.

19

20  _____
    [12]"When a petitioner fails to present a federal claim to the state court, the claim is unexhausted,
21  and the petitioner must generally return to state court." Stokley, 659 F.3d at 809. A claim is, however,
    procedurally defaulted if the petitioner failed to exhaust and is now procedurally barred by the state
22  court. Id. Under Washington law, a collateral challenge may not be asserted more than one year after the
    conviction becomes final. RCW 10.73.090. Petitioner's conviction became final on March 21, 2006
23  when the Washington Court of Appeals issued its mandate terminating direct review. R&R (Dkt. #26) at
    6. Petitioner's Fifth Amendment ground for relief is therefore procedurally barred in state court. As
24  petitioner's claim is procedurally barred he "satisf[ies] the technical requirements for exhaustion; there
    are no state remedies any longer available to him." Stokley, 659 F.3d at 810 (internal quotation marks
25  and citation omitted). Petitioner must therefore "demonstrate cause for the default and actual prejudice
    as a result of the alleged violation of federal law" for this Court to consider his Fifth Amendment ground
26  for relief. Id.

1214. Petitioner asserts that had the prosecution satisfied its duty of candor and revealed

the level of state assistance to the civil wrongful death plaintiff, he would have been able

to identify and develop his claim. <u>See</u> Response (Dkt. #81) at 10-11.

   The Court however fails to see why the state's alleged lack of transparency

impeded petitioner from asserting his Fifth Amendment claim. Petitioner identified the

Fifth Amendment claim in his Personal Restraint Petition to the Washington Court of

Appeals.[13] Response (Dkt. #81) at 14. Petitioner states that "[t]he deputy prosecutor,

detectives and police officers frequently huddled with the civil plaintiff and her legal

team during the trial." Objection (Dkt. #90) at 17. Petitioner also reports that Detective

Rinta was especially involved with the plaintiff's case but, again, in an overtly visible

manner throughout the trial. <u>Id.</u>, Response (Dkt. #81) at 8. Petitioner also never

satisfactorily explains why it took him four years (and an appeal to the Ninth Circuit) to

assert this ground for relief. Petitioner's own statements show that he must have been

aware of the state's assistance to the civil plaintiff as they were apparently working in

tandem throughout the trial. He evidently felt he had the necessary information

concerning the Fifth Amendment ground for relief to include it in his state Personal

Restraint Petition. This Court does not find sufficient "cause" for petitioner's lengthy

delay in asserting his Fifth Amendment ground for relief and will not consider the claim

under the "cause and prejudice" standard.

---

[13]In his Personal Restraint Petition, petitioner listed the Fifth Amendment as a constitutional provision the Washington Court of Appeals should consider when determining the issues arising from the admission of the civil trial testimony. Dkt. #17 Ex. 22 at 8a. Petitioner also wrote "The State had to come up with a way that convinced the jury that she was dead. The State had no other way to show that there was a death." <u>Id.</u> When discussing the prosecution petitioner stated: "This case was at the very least intriguing. Pushed on by the mother in law and the lack of unavailing evidence. There appeared a deliberate misplaced denial of actual facts, pushed over the paradox of what to do? A plan began to emerge. Let's charge him with a wrongful death, which was done in 1998 with success! Still we needed more so lets [*sic*] wait to tie the loose ends up and perhaps embellish it a bit and wallah [*sic*] we have a conviction." <u>Id.</u> Ex.23 at Introduction p.2.

ORDER DISMISSING FEDERAL
HABEAS PETITION          -16-

1    Petitioner is not entitled to an evidentiary hearing under § 2254(e)(2) for a similar

2    reason. A petitioner must show either "a new rule of constitutional law" or "a factual

3    predicate that could not have been previously discovered through the exercise of due

4    diligence" to be granted an evidentiary hearing. 28 U.S.C. § 2254(e)(2). Petitioner has not

5    claimed that new, retroactive constitutional law applies to his claim. As discussed above,

6    the Court is not convinced that petitioner acted with "due diligence" as required by

7    § 2254(e)(2)(A)(ii). The Court has not been made aware of a new factual predicate that

8    can excuse petitioner's lack of diligence in pursuing his Fifth Amendment ground for

9    relief. Petitioner knew that he potentially had a Fifth Amendment claim when he

10   submitted his Personal Restraint Petition in state court and has not asserted the ground in

11   federal court until now. Petitioner is therefore not entitled to an evidentiary hearing under

12   § 2254(e)(2).

13   **2. Motion to Amend Petition**

14   Pursuant to Fed. R. Civ. P. 15(a), petitioner has moved to amend his habeas

15   petition to add the Fifth Amendment claim as an eleventh ground for relief. Motion (Dkt.

16   #93) at 1. In deciding whether to grant leave to amend, federal courts are guided by the

17   following factors: "undue delay, bad faith or dilatory motive on the part of the movant,

18   repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

19   to the opposing party by virtue of allowance of the amendment, futility of amendment."

20   Foman v. Davis, 371 U.S. 178, 182 (1962). "A court evaluates the delay issue by

21   determining whether the moving party knew or should have known the facts and theories

22   raised by the amendment in the original pleading." Isilon Sys. Inc. v. Twin City Fire Ins.

23   Co., No. C 10-1392 MJP, 2012 WL 503854, at *3 (W.D. Wash. Feb. 15, 2012) (citing

24   Jackson v. Bank of Hawaii, 902 F.2d 1385, 1388 (9th Cir. 1990)).

25   As discussed above, petitioner has not demonstrated to the Court's satisfaction that

26   he was diligent in pursuing his Fifth Amendment claim. Petitioner knew about the state's

ORDER DISMISSING FEDERAL
HABEAS PETITION                    -17-

1  assistance to the plaintiff during the civil wrongful death trial and had enough information

2  to cite the Fifth Amendment in his state court Personal Restraint Petition. Additionally,

3  petitioner has waited until the final breaths of his federal habeas petition to raise this

4  additional ground for relief. The Court therefore DENIES petitioner's "Motion for Leave

5  to File an Amended Petition for Writ of Habeas Corpus" (Dkt. #93) because of his undue

6  delay.

7  **3. Ineffective Assistance of Counsel**

8      Petitioner has, in the alternative, asserted a Sixth Amendment ineffective

9  assistance of counsel ground for relief should this Court fail to find "cause" for the

10  procedural default of his Fifth Amendment claim.

11      The Supreme Court has "announced an exception to the longstanding <u>Coleman [v.</u>

12  <u>Thompson</u>, 501 U.S. 722 (1991)] rule that ineffective assistance of PCR counsel cannot

13  establish cause to overcome procedural default." <u>Dickens v Ryan</u>, __ F.3d __, No. 08-

14  99017, 2014 WL 241871, at *12 (9th Cir. Jan. 23, 2014). The Court held:

15      Where, under state law, claims of ineffective assistance of trial counsel
must be raised in an initial-review collateral proceeding, a procedural

16      default will not bar a federal habeas court from hearing a substantial claim
of ineffective assistance at trial if, in the initial review collateral proceeding,

17      there was no counsel or counsel in the proceeding was ineffective.

18  <u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1320 (2012). To establish "cause" for a procedural

19  default under <u>Martinez</u>, a petitioner must show "(1) the underlying ineffective assistance

20  of trial counsel claim is 'substantial'; (2) the petitioner was not represented ... during the

21  PCR proceeding; (3) the state PCR proceeding was the initial review proceeding; and (4)

22  state law required ... the petitioner to bring the claim in the initial review collateral

23  proceeding."[14] <u>Dickens</u>, 2014 WL 241871, at *12.

24  ────────────

25      [14]As the Court finds that petitioner has not satisfied the "substantial" element, the Court declines
to determine whether <u>Martinez</u> is applicable to Washington. The Supreme Court has "slightly modified

26  the fourth requirement to allow a finding of 'cause' where it is 'highly unlikely' that an IAC claim can

ORDER DISMISSING FEDERAL
HABEAS PETITION                   -18-

1   "To overcome the default, a prisoner must ... demonstrate that the underlying

2   ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the

3   prisoner must demonstrate that the claim has some merit." Martinez, 132 S. Ct. at 1318.

4   "An IAC claim has merit where (1) counsel's 'performance was unreasonable under

5   prevailing professional standards,' and (2) 'there is a reasonable probability that but for

6   counsel's unprofessional errors, the result would have been different.'" Cook v. Ryan,

7   688 F.3d 598, 610 (9th Cir. 2012) (internal citation omitted). "Substantiality" requires

8   petitioner to demonstrate that "reasonable jurists could debate whether ... the petition

9   should have been resolved in a different manner or that the issues presented were

10  adequate to deserve encouragement to proceed further." Detrich v. Ryan, __F.3d__, No.

11  08-99001, 2013 WL 4712729, at *6 (9th Cir. Sept. 3, 2013) (internal citation omitted).

12  Petitioner has merely alleged an ineffective assistance of counsel claim relating to the

13  admission of his civil trial testimony without any accompanying legal or factual support.

14  See Objection (Dkt. #90) at 20-21 n.7. This legal conclusion is insufficient for the Court

15  to find petitioner's ineffective assistance of counsel claim "substantial" as required by

16  Martinez. See Martinez, 132 S. Ct. at 1318.

17  **4. Motion to Expand the Record and Motion to Strike**

18      Petitioner has moved to expand the record (Dkt. #76) while respondent has moved

19  to strike (Dkt. #80).[15] Although the 2nd R&R concluded that all but one exhibit should

---

be raised on direct appeal." Ha Van Nguyen v. Curry, 736 F.3d 1287, 1293 (9th Cir. 2013) (citing
Trevino v. Thaler, 133 S. Ct. 1911, 1921 (2013)). Washington State "does not categorically require
claims of ineffective assistance of counsel be brought only on collateral review." Marlow v. Miller-
Stout, No. C11-1548-MJP-BAT, 2012 WL 6968404, at *3 n.2 (W.D. Wash. Dec. 6, 2012).
Martinez therefore only applies to Washington if it is "highly unlikely" that ineffective assistance of
counsel claims can be raised on direct review. The Court declines to address the issue at this time.

    [15]Both motions relate to additional evidentiary exhibits submitted by petitioner in support of his
newly raised Fifth Amendment ground for relief.

ORDER DISMISSING FEDERAL
HABEAS PETITION          -19-

1  be struck,[16] this Court GRANTS petitioner's motion to expand the record and DENIES

2  respondent's motion to strike. As the Court finds that petitioner deserves to preserve an

3  appeal on his Fifth Amendment claim, the evidence will be admitted for that purpose.

4  **J. Certificate of Appealability**

5        Petitioner may appeal a district court's dismissal of his federal habeas petition

6  only after obtaining a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of

7  appealability may be issued upon "a substantial showing of the denial of a constitutional

8  right." 28 U.S.C. § 2253(c)(2). The standard is satisfied by "demonstrating that jurists of

9  reason could disagree with the district court's resolution of his case or that the issues

10 presented were adequate to deserve encouragement to proceed further." Miller-El v.

11 Cockrell, 537 U.S. 322, 327 (2003). Under this standard, the Court disagrees with the

12 2nd R&R and concludes that petitioner is entitled to a certificate of appealability on both

13 his claim concerning the admissibility of Rick Jordan's hearsay testimony and his new

14 Fifth Amendment claim that his privilege against self-incrimination was violated through

15 the admission of his civil trial testimony.

16               **III. Conclusion**

17       Having reviewed the relevant pleadings, the declarations and exhibits attached

18 thereto, and the remainder of the record, this Court hereby finds and ORDERS:

19 (1) The Court partially adopts the 2nd R&R (Dkt. #86) as explained above.

20 (2) Petitioner's "Motion to Expand the Record Pursuant to Habeas Rule 7" (Dkt. #80) is

21 GRANTED.

22 (3) Respondent's "Motion to Strike Petitioner's Exhibits and Brief" (Dkt. #76) is

23 DENIED.

24

25       [16]The 2nd R&R would have admitted Rick Jordan's testimony concerning Juliana Schubert's

26 hearsay statements during petitioner's first trial. 2nd R&R (Dkt. #86) at 9.

ORDER DISMISSING FEDERAL
HABEAS PETITION                    -20-

1  (4) Petitioner's "Motion for Leave to File an Amended Petition for Writ of Habeas

2  Corpus" (Dkt. #93) is DENIED.

3  (5) Petitioner's federal habeas petition (Dkt. #4) is DENIED. This action is

4  DISMISSED.

5  (6) The Clerk is directed to forward a copy of this Order to all counsel of record.

6

7

8        Dated this 26th day of February, 2014.

9

10

11        Robert S. Lasnik

12        United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER DISMISSING FEDERAL
HABEAS PETITION                    -21-